THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
WILLIAM SUTHERLAND, Sr., WILLIAM SUTHERLAND,
Jr., AND JULIUS CHRISTIAN, PLAINTIFFS IN ERROR.

Submitted October 13, 1939—Decided December 28, 1939.

Before Brogan, Chief Justice, and Justices Donges and
Porter.

For the plaintiff in error, *J. Victor D'Aloia* and *Edward F. Broderick*.

For the defendant in error, *John Drewen (Richard Stockton, 3d,* of counsel).

The opinion of the court was delivered by

PORTER, J. The plaintiffs in error (hereinafter called defendants) were convicted at the Morris County Quarter Sessions upon an indictment charging the commission of a conspiracy, jointly with Harold Latham, to pervert and obstruct the due administration of law relating to the election of members of the Board of Education in the township of Pequannok.

There was a severance as to Latham who entered a plea of guilty and testified on behalf of the state. From his testimony corroborated by others and by documentary evidence the state contended that Sutherland, Sr., had been the instigator and director of a conspiracy to elect or void the election of certain candidates at the school board election held February 8th, 1939, in said township by the use of corrupt means. The contention was that the plan which was made and executed was that Sutherland, Jr., was selected as judge of one election district and Latham judge of the remaining district; that as such after the polls had closed when the votes were canvassed they read the ballots to the members of the election board who were recording the same without allowing anyone else to read them and in doing so called out the names of the favored candidates when in fact they had not been voted for, the plan was to do that a sufficient number of times to cause their election. Or failing to elect those favored to so manipulate the election that same might result in a recount or the invalidity of the election. It is further contended that immediately after the votes were counted they were taken possession of together with the tally sheets and election reports by Sutherland, Jr., and Latham and taken by them, accompanied by Christian, to a hotel room in Paterson which was engaged by Sutherland, Jr., under the name of William Harrison, which name he signed on the hotel

registry; that those three spent the rest of the night and until after mid-day of February 9th, in the hotel room in substituting new ballots in place of those fraudulently read and counted so that the ballots as finally strung on the cord would correspond to the false tally sheets. Latham says that he then went from the Paterson hotel to the office of the superintendent of schools in Morristown where he deposited the ballots so manipulated and other papers relating to the election.

We are not concerned with the success or otherwise of the scheme nor of the circumstances or result of the election recount except in so far as the evidence concerning those matters might throw light on the truth or falsity of the charges.

The defense was a complete denial of the charges. So there was presented sharp disputes as to the evidence for the consideration of the jury.

Various assignment of error are grouped and argued under eight points. Those not argued are considered abandoned.

*One,* that it was error for the trial court not to have granted the motion to direct a verdict of acquittal at the close of the state's case. In support of this point the defendants argue that the state based its case on the testimony of Latham which failed to show any conspiracy as charged, that whatever fraud was committed by Latham as judge of the election was done by him to vent his spite against those candidates against whom he bore a grudge because of failure to secure appointment as truant officer or school bus driver or to curry favor with Sutherland, Sr., but without any knowledge of his fraudulent acts by the latter. We conclude that the proofs were sufficient and were of matters set forth in the indictment.

The evidence of Latham was corroborated by other witnesses and by documentary evidence and circumstances to sustain the indictment. The form or substance of the indictment was not questioned and to do so now is untimely. *R. S.* 2:188-6.

*Two,* that the trial court erroneously permitted the defendant Sutherland, Sr., to testify on cross-examination, over objection, concerning the setting aside of the election by the

Commissioner of Education. The argument is that this was prejudicial to the plaintiffs in error because it led the jury to the conclusion that if the election was set aside for irregularity it would be attributable to the conduct of the defendants and so point to their guilt of the charge in the indictment. One of the alleged plans of the conspiracy was in the event of failure to carry the election to so manipulate the conduct of the election as to justify an application for a recount. Counsel for Sutherland, Sr., questioned him on direct examination about the application for the recount and its effect on the result. This examination was for the purpose of showing that there was no conspiracy and that there was ground for the application for the recount because of rejected ballots quite outside of the alleged conspiracy. In that posture it was clearly proper to cross-examine as to details of the application and result of the recount in full as having a direct bearing on the history of the alleged conspiracy. 12 *Corp. Jur.* 634, § 227. We find no error in permitting this line of cross-examination under the circumstances. In this type of case wide latitude must be given the trial court in the admission of evidence and its materiality is largely a matter of his discretion.

*Three,* that the trial court erroneously charged the jury by saying to it, in effect, that its only duty was to see that the law is properly applied to the evidence. The criticism is that it is not an accurate statement because its duty is to find facts only. Further that it was error for the trial court to comment in speaking of the importance of jury service, that consideration should be given to the fact that the grand jury had found this indictment because, it is urged, those remarks tended to magnify and exaggerate the fact of the indictment. We find no error here. The court was properly explaining the judicial system and the functions of both the grand and petit juries.

*Four,* that the trial court erroneously charged the jury in outlining the importance of the indictment and the averments therein set forth. The comment of the court was "the indictment is very important but limited in its scope," and saying further in effect, that the plaintiffs in error were only charged

with conspiracy. It is argued that these comments convey the impression of the court that they should have been charged with a more serious crime which was prejudicial. We think not. The charge when considered in its entirety does not carry any such meaning or impression.

*Five,* that the court erred in its charge to the jury in defining conspiracy in that it was confusing. It was not necessary for the court to define the crime. *State* v. *Geltzeiler,* 2 *N. J. Mis. R.* 1106; 101 *N. J. L.* 415. We think, however, that the court did define the conspiracy which was charged and that what was said was not confusing or erroneous.

*Six,* that the court erroneously charged the jury with reference to the alibis of the defendants Sutherland, Jr., and Christian. In effect the court said with reference to the testimony that these two defendants were not at the Paterson hotel the night of the election but were both at their homes, that such testimony was known as an alibi and that they had a right to introduce such testimony "but it is for you to say whether or not you attach any credibility to the story as related concerning the respective alibis of Sutherland, Jr., at home in bed, and Christian, at home in bed." It is argued that this instruction violates the rule that the jury must be satisfied beyond a reasonable doubt. A defense of alibi in a conspiracy case where as here the acts charged did not all occur at one time and place might be said to be a misnomer. The testimony at best can be said to be an alibi of but one phase of the case, namely, the alleged trip to Paterson. So when the court referred to that testimony as alibi without qualification such characterization was favorable to the defense rather than the reverse. The court added to what is above quoted the following: "Our law has made provision for what you shall do in the consideration of an alibi, for our law provides that if a reasonable doubt of guilt is raised, even in inconclusive evidence of an alibi, the defendant is entitled to the benefit thereof and should be acquitted."

We conclude that there was no reversible error and that there was a substantial compliance with the law as to charging reasonable doubt.

*Seven,* that it was error to permit Latham to plead guilty in the presence of the jury immediately before giving his testimony for the state and that the comment of the court upon objection of the defendants to the plea being entered was to the effect that a man might enter a plea of guilty "when he is guilty" and that the prosecutor wanted him to plead before testifying so that he might appear "under true colors." The charge of the court is also criticised wherein reference is made to Latham's plea and becoming a state witness with the added statement "so that at least you know that he does not shield himself from the penalty of this indictment."

We find no error in the court's action in these respects. To take pleas under those circumstances has long been the practice and was approved in *State* v. *De Bellis,* 5 *N. J. Mis. R.* 375. Nor do we see any error in the court's reference to Latham as being guilty and appearing in his true colors. There was no question about his guilt, he was admitting it and of course the prosecutor wanted the jury to know his true position. It would seem that the defense should desire that also. The defense was not prejudiced in our opinion.

Finally it is argued that the verdict is against the weight of the evidence, contrary to law and the result of mistake, passion, prejudice and partiality.

We find no merit in these contentions. The case was ably and fairly tried and conducted by counsel and the court. A careful reading of the testimony shows an abundance of testimony from which the jury was justified in finding the guilt of the defendants. Nor do we discern anything in the record from which we can draw any conclusion or inference of mistake, passion, prejudice or partiality.

The judgments under review are affirmed.