LUDMIL CHOTKOWSKI v. STATE OF CONNECTICUT
(13683)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued October 4—decision released November 21, 1989

*Robert J. Krzys,* for the appellant (plaintiff).

*Taka Iwashita,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* attorney general, and *Charles A. Overend,* assistant attorney general, for the appellee (state).

PER CURIAM. In this action for breach of an employment contract the trial court rendered summary judgment for the defendant state of Connecticut on the ground that the plaintiff, Ludmil Chotkowski,[1] as a state employee in the classified service, had no contractual rights, express or implied, against the state as his employer but only those rights made available to state employees by statute. The plaintiff has appealed from the judgment, claiming that his suit can be maintained because the claims commissioner has authorized him to bring the action against the state pursuant to General Statutes § 4-160 (a).[2] He relies upon the provision declaring that, when a suit has been authorized by the commissioner, as in this case, "[t]he rights and liabil-

---

[1] The present action is related to an earlier suit by the plaintiff in which he appealed his dismissal as chief of medicine at the Veterans Home and Hospital in Rocky Hill. The state personnel appeal board rejected his appeal on the ground that he was not a permanent employee in the classified service and thus had no right to appeal his dismissal.

The plaintiff then appealed the decision of the state personnel appeal board. The trial court sustained his appeal and this court affirmed that decision in *Chotkowski* v. *Connecticut Personnel Appeal Board,* 176 Conn. 1, 404 A.2d 868 (1978). After the case had been remanded to the state personnel appeal board, the parties reached a settlement of the plaintiff's claims relating to the termination of his employment. Thereafter, on October 4, 1979, the plaintiff filed with the claims commissioner notice of his present claim, which involves a reduction in his pay for the period October 14, 1975, through April 8, 1976.

[2] "[General Statutes] Sec. 4-160. AUTHORIZATION OF ACTIONS AGAINST THE STATE. (a) When the claims commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable. In each such action the claimant shall allege such authorization and the date on which it was granted. The state waives its immunity from liability and from suit in each such action and waives all

ity of the state in each such action shall be coexten-sive with and shall equal the rights and liability of private persons in like circumstances.''

As an alternate ground for affirming the judgment, the state has presented its defense, raised below but not addressed by the trial court, that the authorization granted by the claims commissioner is ineffective because it is based on a special act of the legislature that violates article first, § 1[3] of our state constitution, which prohibits anyone from receiving "exclusive public emoluments or privileges from the community." It is undisputed that, when the plaintiff first presented his notice of claim to the commissioner pursuant to General Statutes § 4-147,[4] no award was made because the claim was barred by the one year limitation for present-

---

defenses which might arise from the eleemosynary or governmental nature of the activity complained of. The rights and liability of the state in each such action shall be coextensive with and shall equal the rights and liability of private persons in like circumstances."

[3] Article first, § 1 of our state constitution provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

[4] "[General Statutes] Sec. 4-147. NOTICE OF CLAIM. FILING FEES. Any person wishing to present a claim against the state shall file with the clerk of the office of the claims commissioner a notice of claim, in duplicate, containing the following information: (1) The name and address of the claimant; the name and address of his principal, if the claimant is acting in a representative capacity, and the name and address of his attorney, if the claimant is so represented; (2) a concise statement of the basis of the claim, including the date, time, place and circumstances of the act or event complained of; (3) a statement of the amount requested, and (4) a request for permission to sue the state, if such permission is sought. A notice of claim, if sent by mail, shall be deemed to have been filed with the office of the claims commissioner on the date such notice of claim is postmarked. Claims in excess of one thousand dollars shall be accompanied by a check or money order in the sum of twenty-five dollars payable to the treasurer, state of Connecticut. Claims for one thousand dollars or less shall be accompanied by a check or money order in the sum of ten dollars payable to the treasurer, state of Connecticut. Fees may be waived by the commissioner for good cause but such action by the commissioner shall not relieve the claimant from the obligation of filing his notice of claim in timely fashion within the statute of limitations under section 4-148. The clerk of the office of the claims

ing claims against the state prescribed by General Statutes § 4-148 (a).[5] The legislature rejected the commissioner's recommendation, however, and enacted a special act[6] allowing the plaintiff to prosecute his claim against the state despite the untimely notice. After this enactment the plaintiff reasserted his claim before the commissioner, who, in reliance on the special act, granted the plaintiff permission to sue the state in accordance with § 4-160.

The trial court refrained from deciding the issue of the constitutionality of the special act because its conclusion that the plaintiff could not prevail on the merits made it unnecessary to do so. "Constitutional issues are not considered unless absolutely necessary to the

commissioner shall promptly deliver a copy of the notice of claim to the attorney general. Such notice shall be for informational purposes only and shall not be subject to any formal or technical requirements, except as may be necessary for clarity of presentation and facility of understanding."

[5] "[General Statutes] Sec. 4-148. LIMITATION ON PRESENTATION OF CLAIM. (a) No claim shall be presented under this chapter but within one year after it accrues. Claims for injury to person or damage to property shall be deemed to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered, provided no claim shall be presented more than three years from the date of the act or event complained of."

[6] Special Act No. 85-24, approved on May 13, 1985, entitled "AN ACT VALIDATING THE FILING OF NOTICE OF THE CLAIM OF LUDMIL CHOTKOWSKI WITH THE CLAIMS COMMISSIONER," provided: "Be it enacted by the Senate and House of Representatives in General Assembly convened:

"The claim of Ludmil Chotkowski, filed against the state of Connecticut with the claims commissioner, otherwise valid except that proper notice of said claim was not filed with the clerk of the office of the claims commissioner as required by section 4-147 of the general statutes and within the time specified by section 4-148 of the general statutes, is validated and declared sufficient to permit Ludmil Chotkowski to maintain and prosecute his claim against the state notwithstanding the lack of proper notice. The state shall be barred from setting up the failure to comply with the provisions of sections 4-147 and 4-148 of the general statutes with respect to the claim and shall also be barred from denying that notice of the claim was properly and timely given pursuant to sections 4-147 and 4-148 of the general statutes."

decision of a case . . . or unless sufficient public interest warrants such a review." *State* v. *DellaCamera,* 166 Conn. 557, 560–61, 353 A.2d 750 (1974). In this case, however, the constitutional issue of the validity of the special act that induced the claims commissioner to authorize the plaintiff to sue the state involves jurisdiction and should properly have been decided before considering the merits of the action. Accordingly, we do not reach the substantive issues involving the merits of the plaintiff's cause of action, because our disposition of the constitutional issue signifies a lack of jurisdiction. For this reason we find error in the form of judgment and remand the case with direction to render a judgment of dismissal for lack of jurisdiction.[7]

In a recent decision of this court, *Merly* v. *State,* 211 Conn. 199, 558 A.2d 977 (1989), we held that a special act allowing a claimant to sue the state despite failure to present his claim to the claims commissioner within the time allowed by § 4-148 (a) constituted the grant of "exclusive public emoluments or privileges" in violation of article first, § 1. "No enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gain or advantage to an individual." *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 106, 90 A.2d 862 (1952). "Only if an act serves some public purpose can it be constitutionally sufficient." *Tough* v. *Ives,* 162 Conn. 274, 292, 294 A.2d 67 (1972).

"Under circumstances like those in the present case, where a special act has allowed a person named therein to bring a suit based upon a statutory cause of action

---

[7] This court has not always recognized that, when a special act authorizing a suit has been declared unconstitutional, the invalidity of the act often defeats jurisdiction to entertain the action. See *Merly* v. *State,* 211 Conn. 199, 558 A.2d 977 (1989); *Hillier* v. *East Hartford,* 167 Conn. 100, 355 A.2d 1 (1974); cf. *Vecchio* v. *Sewer Authority,* 176 Conn. 497, 507, 408 A.2d 254 (1979).

that would otherwise be barred for failure to comply with a time limit specified in the statute, we have ordinarily been unable to discern any public purpose sufficient to sustain the enactment." *Merly* v. *State,* supra, 213; *Vecchio* v. *Sewer Authority,* 176 Conn. 497, 503–507, 408 A.2d 254 (1979). This plaintiff has been no better able than the plaintiff in *Merly* to identify any public purpose to be served by the special act. He does not even claim, as was done in *Merly,* that the state caused the delay in presenting his claim to the claims commissioner, "a situation which would afford strong legislative grounds for legislative interference." *Sanger* v. *Bridgeport,* 124 Conn. 183, 189, 198 A. 746 (1938). The only consideration he advances is that the legislature may have intended to recognize "an honorary obligation so that substantial justice could be realized." *Hillier* v. *East Hartford,* 167 Conn. 100, 104–105, 355 A.2d 1 (1974); see *Vecchio* v. *Sewer Authority,* supra, 506–507.

The "honorary obligation" relied upon by the plaintiff, however, is based wholly upon the asserted merit of his cause of action for breach of contract and does not implicate the delay in filing his claim with the claims commissioner. If the limitation of § 4-148 (a), requiring a claim against the state to be presented within one year after its accrual, could be set aside for the benefit of a particular person simply because the legislature viewed his claim as meritorious, it would be difficult to justify enforcing the limitation to bar *any* claim against the state from being resolved solely on its merits. It is inevitable that such a limitation does defeat some worthy claims that have not been timely presented, as the legislature must have realized when it enacted § 4-148 (a). Our state constitutional ban on awarding "exclusive public emoluments or privileges from the community" is indifferent to the wisdom of

such a limitation as contained in § 4-148 (a), but insists that, so long as it remains, it must be applied uniformly to all claimants.

Because we conclude that this case is indistinguishable from our recent decision in *Merly,* we conclude that the summary judgment adjudicating the merits of the plaintiff's action must be set aside and judgment of dismissal for lack of jurisdiction over the defendant must be rendered.[8]

There is error in the form of the judgment, the judgment is set aside and the case is remanded with direction to render a judgment of dismissal for lack of jurisdiction over the defendant.

---

[8] The defendant raised the jurisdictional issue in the trial court by a motion to dismiss on the ground of its sovereign immunity based upon the unconstitutionality of the special act relied upon by the plaintiff. The court, *Hale, J.,* denied the motion, believing that the constitutional issue could not be raised by a motion to dismiss. When the constitutionality of a statute implicates the jurisdiction of the court, however, a motion to dismiss may properly serve as a vehicle for presenting such an issue. A jurisdictional issue may be raised at any time. *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 529 A.2d 666 (1987). "Once brought to the attention of the court, regardless of the form of the motion, it must be acted upon." *Cahill* v. *Board of Education,* 198 Conn. 229, 238, 502 A.2d 410 (1985).