[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS AND MOTIONFOR SUMMARY JUDGMENT
Summary of the Facts and Procedural History:
By way of a Third Revised Complaint the plaintiff, individually and as administratrix of her decedent's estate, alleges the following facts.
At all relevant times, the State of Connecticut owned, operated and controlled Norwich Hospital (hereinafter the "hospital"), a facility designed to care for the mentally ill. On November 29, 1986, Charleen Bump had been involuntarily committed to the hospital be cause she was at risk of committing suicide. Hospital physicians evaluated Ms. Bump and periodically monitored her progress. Prior to the scheduled end of her involuntary commitment, hospital staff determined that the hospital should recommend that Ms. Bump remain hospitalized even if the stay was involuntary. On December 22, 1986, a statutory hearing was held to consider whether to extend the involuntary commitment or release Ms. Bump. The hospital had been aware, pursuant to a notice from the court in 1982, that the court preferred to have physician testimony at hearings of this nature. The hospital did not promulgate or enforce policies that would have required one or more members of the staff to attend involuntary commitment hearings. Although it knew, or should have known, of Ms. Bump's propensity to avoid taking medications prescribed to treat her mental illness and that without ingesting her medications, Ms. Bump would resume her suicidal behavior and put herself and others at risk without intervention, the hospital neglected to send staff to testify at Ms. Bump's hearing or submit adequate records for the hearing court to review. The complaint further CT Page 4410 alleges that the hospital failed to adequately care for, diagnose or medicate Ms. Bump.
Due to the hospital's alleged improper conduct, Ms. Bump was permitted to leave the hospital on December 22, 1986. On December 25, 1986, the decedent, Joseph P. Bodzioch had been driving in Rhode Island. His wife, Sheryl M. Ruark (f/k/a Sheryl M. Bodzioch) had been a passenger in the car. On that date, Ms. Bump, who had been driving in an easterly direction, intentionally turned the vehicle she was driving into the westbound lane and collided with the Bodzioch vehicle. Mr. Bodzioch and Ms. Bump died as a result of the collision. The plaintiff suffered physical and emotional injuries.
On December 23, 1987, the plaintiff notified the Office of Claims Commissioner of the State of Connecticut that she intended to bring suit against the state and requested permission to do so. The state Claims Commissioner (hereinafter the "commissioner") authorized suit on March 8, 1995. The initial complaint against the state was amended several times, with the Third Revised Complaint being the operative pleading.
On September 20, 1996, the State of Connecticut filed A Motion to Dismiss and for Summary Judgment (#120 and #120.25, respectively) seeking to dismiss 1) so much of all three counts as are based on the allegations of paragraphs 10(a)(b)(c) and (e) as barred for reason of judicial immunity, 2) so much of the claims as are based on paragraphs 10(d) and (f) for the reason of sovereign immunity because the Commissioner's permission to sue does not extend to those allegations and 3) all of count three on the ground of sovereign immunity. The motion also seeks summary judgment as to counts one and two for the reason that the defendant did not owe the plaintiff's any duty as a matter of law thereby precluding recovery for negligence. On October 24, 1996, the plaintiff filed a Memorandum of Law in Opposition to Defendant's Motion to Dismiss and for Summary Judgment (hereinafter the defendant's "Memorandum of Law"). The plaintiff argues that the defendant's judicial immunity argument is not supported by the facts or by the claims presented, that for various reasons set out below, paragraphs 10(d) and (f) and all of count three are not barred by the doctrine of sovereign immunity, and that the hospital did owe a duty to the plaintiffs.
The court holds that the motions to dismiss and for summary judgment are denied except as to dismissal of count three. CT Page 4411
1. MOTIONS TO DISMISS
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiffcannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer,218 Conn. 531, 544, 590 A.2d 914 (1991). It tests, "inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State, 190 Conn. 622, 624,461 A.2d 991 (1983). Pursuant to Practice Book § 143, "[t]he motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process. This motion shall always be filed with a supporting memorandum of law, and where appropriate, with supporting affidavits as to facts not apparent on the record." "Jurisdiction over the person, jurisdiction over the subject-matter, and jurisdiction to render the particular judgment are three separate elements of the jurisdiction of a court." Bridgeport v. Debek,210 Conn. 175, 179, 554 A.2d 728 (1989). "Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) Grant v. Bassman,221 Conn. 465, 470, 604 A.2d 814 (1992). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." FederalDeposit Insurance Corporation v. Peabody, 39 Conn. 93, 99,680 A.2d 1321 (1996).
"[T]he court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light."Savage v. Aronson, 214 Conn. 256, 263, 571 A.2d 696
(1990). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone . . . Where, however . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Citation omitted; internal quotation marks omitted.) Barde v. Board of Trustees,207 Conn. 5962, 539 A.2d 1000 (1988). CT Page 4412
A. Judicial Immunity
Under the doctrine of judicial immunity, judges and certain other court personnel are absolutely immune from liability for actions taken in the course of their official duties. Springv. Constantino, 168 Conn. 563, 565, 362 A.2d 871 (1975). The purpose of the doctrine is to "promote `principled and fearless decision-making' by removing a judge's `fear that unsatisfied litigants may hound him with litigation charging malice or corruption." Id. 565 (quoting Pierson v. Ray,386 U.S. 547 (1967)). "The motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, and (5) insufficiency of service of process. . . ." Practice Book § 143. In some instances, a motion to dismiss has been granted pursuant to other jurisdictional claims. See Halpern v. Board ofEducation, 196 Conn. 647, 495 A.2d 264 (1985) (prior pending action); Union Carbide Corp. v. Aetna Casualty SuretyCo., 212 Conn. 311, 562 A.2d 15 (1989) (forum non conveniens); Federal Deposit Insurance Corporation v.Peabody, 239 Conn. 93, 680 A.2d 1321 (1996) (sovereign immunity); Fink v. Goldenbock, 238 Conn. 183,680 A.2d 1243 (1996) (standing); Simko v. Ervin, 234 Conn. 498,661 A.2d 1018 (failure to exhaust administrative remedies);Chotkowski v. State, 213 Conn. 13, 566 A.2d 419 (1989) (constitutionality of a statute).
The defendant state argues, in its Memorandum of Law, that "the claims asserted [by the plaintiff] are essentially attempts to circumvent the doctrine of judicial immunity." Defendant's Memorandum, 10. The reasoning behind the plaintiff's decision to sue or not to sue certain parties, here allegedly a decision to sue the state because a suit against the judge who ordered Ms. Bump released from confinement would not have succeeded, is not before the court. First, it is not a basis for dismissal enumerated in the Practice Book. P.B. § 143. Secondly, the proposed basis for dismissal has not otherwise been adopted by the courts of this state. The probable judicial immunity of one potential defendant simply does not speak to the court s jurisdiction over another defendant. For these reasons, the motion to dismiss based on a purported intent to circumvent the effect of an alternate defendant's judicial immunity defense is denied. CT Page 4413
B. Sovereign Immunity
"The state and its municipalities enjoy governmental immunity, in certain circumstances, from liability for their tortious acts. . . . The state legislature, however, possesses the authority to abrogate any governmental immunity by statute that the common law gives to the state and municipalities." (Citations omitted.) White v. Burns, 213 Conn. 307, 312,567 A.2d 1195 (1990). It is well-settled that "the sovereign is immune from suit unless the state, by appropriate legislation, consents to be sued." Federal Deposit Insurance Corporation v.Peabody N.E., Inc., supra, 239 Conn. 101. "The question whether the principles of govern mental immunity from suit and liability are waived is a matter for legislative, not judicial, determination. . . . Sovereign immunity may be waived only through a statute." Cooper v. Delta Chi HousingCorporation, 41 Conn. App. 61, 64, 674 A.2d 858 (1996).
"In cases in which no statute waives sovereign immunity, the resort is to the claims commissioner. Lombardi v.Borges, Superior Court, judicial district of Waterbury, Docket No. 113237 (May 6, 1993, Pittman, J., 8 CSCR 611). "The legislature has established a system for the determination of claims against the state. General Statutes §§ 4-141
through 4-165 (b). A significant part of that system is the appointment of a claims commissioner . . . who is vested with sole authority to authorize suit against the state. . . . Decisions of the claims commissioner are not subject to judicial review." (Citations omitted.) Id. "In certain circumstances, upon request of a claimant, the claims commissioner may, on behalf of the state, waive sovereign immunity with respect to a claim that it would otherwise bar. General Statutes § 4-165 provides [that] . . . `[a]ny person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter. . . .' If the claims commissioner `deems it just and equitable, he may waive immunity on behalf of the state and authorize suit against the state." LeMoine v.McCann, 40 Conn. App. 460, 467, 673 A.2d 115 (1996).
In its Memorandum of Law, the defendant state argues two defenses of sovereign immunity. First, it argues that the "allegations of negligence which exceed those set forth in the Notice of Claim are barred by the doctrine of judicial immunity." Defendant's Memorandum of Law, p. 13. More particularly, the defendant argues that there are allegations contained in CT Page 4414 paragraphs 10(d) and (f) of the plaintiff's complaint "concerning the staff physician's failure to properly care for Mrs. Bump and the hospital administration's failure to establish procedures requiring staff attendance at involuntary commitment hearings," that were not included in the plaintiff's Notice of Claim to the claims commissioner and which therefore fall outside the scope of the commissioner's permission to sue. The defendant did not include this claim in its Motion to Dismiss and for Summary Judgment. The court therefore declines to review it and denies the motion to dismiss to the extent that it relies on defendant's sovereign immunity argument focusing on paragraphs 10 (d) and (f).
The court notes, however, that denial is supported as well by the plaintiff's request for permission to sue. Contrary to the defendant's argument, the request states that "the Norwich Hospital, if it were in fact a private hospital, could be held liable for it's (sic) negligent failure to properly treat Mrs. Bump and for negligently permitting her release when it's employees knew or should have known that she was gravely disabled and a danger to herself and others . . ." Plaintiff's Request for Permission to Sue the State and Notice of Claim Against the State, p. 7. This adequately apprised the commissioner of the plaintiff's intent to prove the hospital's alleged negligence. It addresses the facts asserted in paragraph 10(d) of the complaint directly. Further, proof of the fact that the hospital neglected to promulgate or enforce procedures designed to adequately apprise the Probate Court reviewing the release of patients with acknowledged dangerous propensities, as set out in paragraph 10 (e) of the complaint, may be properly based on the plaintiff's assertion, contained in the notice, that the hospital had negligently permitted Ms. Bump's release.
Secondly, the state argues that "[t]he third count alleging bystander emotional distress was not authorized by the claims commissioner," rendering the state immune from suit on that basis and warranting dismissal of the third count. Defendant's Memorandum of Law, p. 14. The plaintiff argues in response that it should be permitted to pursue the bystander emotional distress claim since the statutory scheme, requiring that notice of Claims be provided to the claims commissioner, does not demand the level of particularity that the defendant alleges is necessary. the claim is logically inferred from the noticed language referring to "multiple injuries;" and because pleading requirements for the bystander emotional distress allegation, as set out in 1996 in CT Page 4415Clohessy v. Bachelor, 237 Conn. 31, 675 A.2d 852
(1996), had not been articulated by the courts in 1987 when the plaintiff filed its notice with the commissioner.
Pursuant to Connecticut General Statutes § 4-147, "[a]ny person wishing to present a claim against the state shall file with the clerk of the Office of the Claims Commissioner a notice of claim" containing "a concise statement of the basis of the claim, including the date, time, place and circumstances of the act or event complained of." Such a claim must be "presented . . . within one year after it accrues." Connecticut General Statutes § 4-148. The claim is deemed to accrue on the date when the injury or damage is sustained or discovered. Id. The collision and the state's alleged misfeasance that caused it, occurred on or about December 25, 1986. Thus, to succeed in complying with the relevant statutes, the plaintiff had to file notice of her claim with the commissioner by December 25, 1987. The record reveals that the commissioner received timely notice.
Notwithstanding that our Supreme Court had earlier refused to permit recovery for "nervous shock and mental anguish caused by the sight of injury or threatened harm to another," seeStraza v. McKittrick, 146 Conn. 714, 719, 156 A.2d 149
(1959) (subsequently overruled to the extent that it conflict's with the courts's adoption of the bystander emotional distress cause of action in Clohessy v. Bachelor, 237 Conn. 31,675 A.2d 852 (1996)), the Supreme Court had acknowledged the viability of emotional distress claims prior to 1987. "InMontineri v. Southern New England Telephone Co.,175 Conn. 337, 345, 398 A.2d 1180 (1978), we first recognized a cause of action for `unintentionally-caused emotional distress."'Morris v. Hartford Courant Co., 200 Conn. 676, 683, 513 A.2d 66
(1986). To successfully raise a claim for unintentionally caused emotional distress, a plaintiff had the "burden of pleading and establishing that `the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm.'. . ." (Citations omitted.) Id.
The plaintiff's arguments that language in the notice of "multiple injuries" was sufficient and that it should not be required to have alleged bystander emotional abuse in the notice when, at the time, there was no such cause of action in the state are not availing. It is true that in general our courts are permitted to accept pleadings of legal effect "so long as the CT Page 4416 pleading `fairly [apprises] the adverse party of the state of facts which it is intended to prove.' Practice Book § 109." Id. The modern trend is to construe pleadings broadly and realistically in favor of finding causes of action in the absence of surprise or prejudice. Practice Book § 108, Author's Comments (citing Normand Josef Enterprises. Inc. v.Connecticut National Bank, 230 Conn. 486, 496, 646 A.2d 1289
(1994) and Dornfried v. October Twenty-Four, Inc.,230 Conn. 622, 629, 646 A.2d 772 (1994)). And see Fuller v.First National Supermarkets, Inc. 38 Conn. App. 299, 302,661 A.2d 110 (1995). The rules for construing pleadings seem to mirror the intent of C.G.S. § 4-147 which states that the requisite notice to the commissioner "shall be for informational purposes only and shall not be subject to any formal or technical requirements, except as may be necessary for clarity of presentation and facility of understanding."
Liberal pleading and notice requirements notwithstanding, there existed a cause of action for emotional distress, though not of the "bystander variety," at the time the plaintiff filed her notice with the commissioner but the plaintiff provided no notice of any claim to that effect. General Statutes § 4-147
(2) requires notice in the form of "a concise statement of the basis of the claim." If the plaintiff had notified the commissioner of the basis of the "emotional distress" claim for which she now seeks recovery, this court could have maintained subject matter jurisdiction over it. The authority of the commissioner to permit suit against the state is statutory. In general, statutes authorizing action in derogation of the common law must be strictly construed and are "`not to be extended, modified, repealed or enlarged in . . . scope by the mechanics of construction.' . . ." (Citations omitted.) Murphy v.Buonato, 42 Conn. App. 239, 249, 679 A.2d 411 (1996). More to the point, the courts have specifically called for construction of statutes in favor of maintaining sovereign immunity. Federal Deposit Insurance Corporation v. PeabodyN.E., Inc., supra, 239 Conn. 102. In the absence of a concise notification to the commissioner of the basis for this injury, therefore, the commissioner's generalized permission to sue cannot be construed to include it. That being the case, the state is immune from suit for emotional distress damages and the Third Count of the complaint is dismissed.
C. MOTION FOR SUMMARY JUDGMENT
CT Page 4417
Lastly, the defendant state moves for summary judgment as to Counts One and Two of the complaint on the theory that the plaintiff cannot prevail on those negligence counts as a matter of law because the defendant did not owe a duty to the plaintiff. The plaintiff contends that the hospital, owned and operated by the defendant, knew or should have known of the danger posed by the discharge of Ms. Bump from its care and was under a legal duty to use reasonable care to prevent her release.
"`The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact."' (Citations omitted; internal quotations marks omitted.) Doty v. Mucci,238 Conn. 800, 805-06, 679 A.2d 945 (1996). "There can be no actionable negligence . . . unless there exists a duty of care. . . . Whether a duty of care exists is a question of law to be decided by the court." Waters v. Autori, 236 Conn. 820, 826,676 A.2d 357 (1996).
The court finds that there is an existence of a genuine issue of material fact that should be determined by the trier of fact.
Accordingly, the Motion for Summary Judgment is denied.
ROBERT F. STENGEL JUDGE, SUPERIOR COURT